This case involves administration of a blood test in a paternity action under Code 1975, § 26-12-5.
The pertinent facts are as follows: On March 4, 1983, the District Court of Covington County found Jimmy Calloway to be the father of Monica Lane's illegitimate daughter, Celeste, and ordered him to reimburse the Alabama Department of Pensions and Security $826 for "aid to dependent children" previously provided the child. Calloway appealed to the Circuit Court of Covington County, filing a motion alleging indigency and requesting appointment of counsel and a blood test at state expense. Both motions were denied. The trial court determined that a previous court-ordered blood test performed on January 5, 1983, *Page 309 
was sufficient to protect defendant's constitutional rights.
After his request for reconsideration was denied, Calloway petitioned the Court of Civil Appeals for writ of mandamus and for a stay of the proceedings below. The stay was granted, but mandamus was eventually denied, as was Calloway's application for rehearing. He then petitioned here for certiorari, which we granted.
Calloway contends that the Court of Civil Appeals erred in failing to order that a second, more accurate, blood test be performed, at state expense. It is his contention that Littlev. Streater, 452 U.S. 1, 101 S.Ct. 2202, 68 L.Ed.2d 627 (1981), which addressed a Connecticut statute requiring a defendant in a paternity proceeding to pay for a blood test, which he requested in order to disprove his paternity, holds that due process mandates that an indigent defendant in such an action must be provided with the most accurate blood test currentlyavailable, at state expense.
The Court of Civil Appeals, speaking through Judge Bradley, wrote that:
 "In Little the United States Supreme Court said denial of the aid of blood test evidence in a paternity action to an indigent defendant who has the burden of proving by independent evidence that he is not the father of an illegitimate child effectively denied that defendant an opportunity to be heard and thus was a denial of due process. . . .
 "Section 26-12-5, Code 1975, provides that in an illegitimacy case the reputed father can request blood tests be made of the reputed father, the mother, and the child, and that the court may order the costs be paid by the county or one or both of the parties in the case. It appears that petitioner requested blood tests be made; they were made, and the costs assessed against Covington County.
 "The Little case, supra, holds that the reputed father was denied due process because blood tests were not made due to his indigency. The Connecticut statute required the requesting party to pay for the blood tests. In the case at bar the Alabama statute authorized the trial court to assess the costs of the blood tests against the county, and the county was required to pay for the blood tests. Accordingly, we do not find that the petitioner has been denied due process of law by the refusal of the circuit court to order further tests be made at the expense of the county. Also, we do not find that Little v. Streater, supra, mandates a different finding."
456 So.2d 306.
We believe that the reasoning of the court below is sound.
Calloway's basic argument is that, although he was provided, at state expense, with the usual ABO-RH blood test, that test, which will only exclude the paternity of 13 to 18% of Negro males and 19 to 27% of white males, R. Acton, and B. Barger, "Guidelines for the Use of Genetic Tests to Establish Paternity" (Preprint of an article to appear in "A Prosecutor's Handbook for the State of Alabama"), is, as the dissenting member of the Court of Civil Appeals stated, "of such little probative value as to be insufficient" to meet the requirements of due process under Little. He would have us hold that due process requires that indigents be administered, upon request, the "seven systems" test as described in Little, which will negate the paternity of 98% of white males and 96% of Negro males, Acton Barger, supra. Our reading of Little and the cases following it does not support Calloway's contention.
Although the opinion in Little contains a lengthy discussion of the use and effectiveness of blood tests, in particular the "seven systems" test, in negating paternity, nowhere in that opinion does the Supreme Court require that an indigent putative father be given any specific type of blood test or the most accurate test available. The Court, in Little, simply held that the Connecticut statute, when applied to indigents, deniedthem access to blood tests, and amounted to a denial of due process. Calloway refers us to footnote four in the *Page 310 
majority opinion and footnote two in the dissenting opinion ofMills v. Habluetzel, 456 U.S. 91, 102 S.Ct. 1549,71 L.Ed.2d 770 (1982), and to the opinion in Pickett v. Brown, 462 U.S. 1,103 S.Ct. 2199, 76 L.Ed.2d 372 (1983), asserting that these cases show that administration of the "seven systems" test is now required to satisfy due process in cases like the present one. His assertion appears misguided. Neither of those opinions, which deal with limitations periods on paternity actions rather than the accuracy of blood tests, requires that the aforementioned test or any other blood test be performed. Like Little, they only recognize the accuracy and usefulness of the "seven systems" test in negating paternity.
Because we find no requirement, in Little or in the other authority cited by Calloway, for the proposition that any particular blood test must be administered to an indigent putative father, and because Calloway has already received one blood test, although perhaps not the most accurate available, we find that he is not constitutionally entitled to a second such procedure. Therefore, we affirm.
AFFIRMED.
FAULKNER, JONES, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.
ALMON, J., dissents.
TORBERT, C.J., not sitting.