Terrence R. MURDOCK, Appellant (Respondent Below),

v.

Hellen C. MURDOCK, Appellee (Petitioner Below).

No. 4–983A327.

Court of Appeals of Indiana, Fourth District.

July 16, 1985.

Rehearing Denied Aug. 14, 1985.

Lisa R. Cheatham, Steven J. Radford, Legal Services Organ. of Ind., Inc., Indianapolis, for appellant.

YOUNG, Judge.

A support order was entered against Terrence R. Murdock requiring him to provide support for his daughter, Melissa. He appeals, raising these statutory and constitutional issues:

1) whether Indiana law requires a trial court to order blood tests upon a party's request; and

2) whether an indigent respondent in a state-initiated support action, who is married to the child's mother but denies paternity, has due process right to blood tests at state expense.

We reverse.

The instant case arose when on September 16, 1982, Helen Murdock, represented by the Marion County Prosecutor's Office,[1] filed a petition alleging appellant owed a duty of support to his children Dana and Melissa Murdock. The petition further alleged that Mrs. Murdock had assigned her rights against appellant to the Indiana Department of Public Welfare so that any support payments should be made to that agency.[2]

At the hearing on the petition, Mrs. Murdock testified that Dana was born less than a month after she married appellant and that appellant was not Dana's father. The trial court then dismissed the cause as to Dana Murdock.

The cause relating to Melissa, however, was retained. The evidence indicated that the Murdocks were currently separated and had last lived together in October of 1981. Melissa was born in July of 1982. Mrs. Murdock testified that appellant was Melissa's father, and that she had not had sexual intercourse with anyone other than appellant during the time Melissa was conceived.

Murdock denied fathering Melissa, claiming that Mrs. Murdock was seeing other men during that time. He then requested blood grouping tests be performed at the state's expense, since he was currently unemployed. The trial court refused his request; because appellant had no funds to prepay for the tests, none were performed. The court subsequently found appellant to be Melissa's father and entered an order requiring him to provide support.

■ Murdock initially asserts that Indiana law requires a trial court to order blood tests once a party requests them. He cites as authority IND.CODE 31–6–6.-1–8 (1982), which provides in pertinent part:

Upon the motion of any party, the court *shall* order all of the parties to the action to undergo either a blood grouping test or a Human Leukocyte Antigen (HLA) tissue test. (emphasis added.)

The use of the word "shall" indicates the trial court has no discretion in deciding to order such tests when paternity is in issue.[3]

1. The state's involvement is a result of the enactment of IND.CODE 12–1–6.1–1 to –20, which implements Title IV D of the federal Social Security Act, 42 U.S.C. §§ 651–60 (1982). Title IV D requires states to obtain and enforce orders for support of children for whom application to Aid to Families with Dependent Children has been made, and to establish paternity to reduce the number of recipients.

2. IND.CODE 12–1–7–1.1(b) provides for assignment of support orders as follows:

In the case where the parents are either separated or divorced and there is no court order for the support of the child, *the other parent shall cooperate*, within the provisions of the federal rules and regulations, with the state agency responsible for administering Title IV D of the federal Social Security Act in obtaining a support order which order shall then be assigned to the IV D agency as provided in this section. (emphasis added.)

The degree of cooperation required is set out in both the state and federal regulations and includes:

(1) assigning support to the state;

(2) providing information to establish paternity; and

(3) appearing as a witness.

The application form requires the applicant to read a statement which includes:

'I agree to cooperate in getting the absent parent to pay support for the child(ren) for whom application is made. I understand that failure to cooperate without establishing good cause shall result in termination of financial assistance and medicaid for myself.'

See 45 C.F.R. § 232.12 and 470 I.A.C. 10–2–4.

3. Compare Trial Rule 35 of the Indiana Rules of Procedure which allows the court discretion in ordering blood tests and other medical exams upon a showing of "good cause," specifically:

Order for Examination. When the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending *may* order the party to submit to a physical or mental examination by a physician or to produce for examination the person

The statute does not absolve the moving party from his obligation to pay for such tests, however.[1] Neither does the statute require the state to assume these costs. Therefore, any duty we place on the state to assume payment must arise from a source other than the statute cited here.

 Murdock also argues that he is entitled to blood tests at state expense based upon the due process guarantees of the United States and Indiana Constitutions. This court has recognized such a right in actions to establish paternity involving unmarried parents. In *Kennedy v. Wood* (1982), Ind.App., 439 N.E.2d 1367, *trans. denied*, we followed the United States Supreme Court's decision in *Little v. Streater* (1981), 452 U.S. 1, 101 S.Ct. 2202, 68 L.Ed.2d 627, and held that when the state files a paternity action on behalf of a mother receiving public assistance, an indigent respondent's right to due process includes the right to have blood tests performed and initially paid for by the state.[5] We see no reason to require a different result in support actions involving married parties when the state represents the mother and the husband-respondent is indigent and denies paternity. In either case an indigent putative father finds himself at a distinct disadvantage when compared with the ordinary civil litigant, since he faces as an adversary the state with its vast resources, staff, and expertise. This disadvantage is compounded in cases such as this one whereby the husband is presumed by law to be the father since he was married to the mother at the child's birth.[6] IC 31-6-6.1-9.

 In recognizing a due process right to blood tests in state initiated support actions, we have applied the procedural due process analysis established by the United States Supreme Court in *Mathews v. Eldridge* (1976), 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18. That analysis requires the consideration of three factors in determining what procedural safeguards a particular situation demands: 1) the private interest that will be affected by the official action; 2) the risk of erroneous deprivation of such interest through the procedures used and the probable value of additional or substitute procedures; and 3) the Government's interest, including the function involved and the fiscal and administrative burdens these procedures would entail. 424 U.S. at 335, 96 S.Ct. at 903.

Applying these factors to the instant case demonstrates that the denial of blood tests to appellant on the basis of indigency violated his right to due process. As we discussed at length in *Kennedy*, creation of the parent-child relationship carries with it

in his custody or legal control. The order *may be made only on motion for good cause shown and upon notice* to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made. (emphasis added.)

4. Traditionally, the moving party pays the initial costs of any tests he requests.

5. *Accord, Ex parte Calloway* (1983), Ala.Civ. App., 456 So.2d 306, *aff'd* 456 So.2d 308 (Ala. 1984); *Peterson v. Moffitt ex rel. Dept. of Human Resources* (1984), 253 Ga. 253, 319 S.E.2d 449; *State ex rel. Hamilton v. Snodgrass* (1982), Iowa, 325 N.W.2d 740; *Anderson v. Jacobs* (1981), 68 Ohio St.2d 67, 428 N.E.2d 419; *Franklin v. District Court of Tenth Judicial District In And For Pueblo County* (1977), 194 Colo. 189, 571 P.2d 1072; *M. v. S.* (1979), 169 N.J.Super. 209, 404 A.2d 653; *State ex rel. Graves v. Daugherty* (W.Va.1980), 266 S.E.2d 142.

6. Although the presumption of paternity is not conclusive, it may be rebutted only by direct, clear, and convincing evidence, including evidence that the husband:
1) is impotent;
2) was absent so as to have no access to the mother;
3) was absent during the entire time the child must have been conceived;
4) was present with the mother only in circumstances which clearly prove there was no sexual intercourse;
5) was sterile during the time the child must have been conceived;
6) is excluded as the child's father based upon blood grouping test results.
*H.W.K. v. M.A.G.* (1981), Ind.App., 426 N.E.2d 129; *Beck v. Beck* (1973), 159 Ind.App. 20, 304 N.E.2d 541. In this case, appellant's only possible avenue of defense is a blood test which excludes him as the father.

numerous responsibilities and constitutionally protected rights. Thus, the private interest involved here is compelling. The state's interest on the other hand, is primarily financial, its goal being to compel reimbursement for monies expended on the child's behalf and to do so as economically as possible. *See Kennedy, supra,* at 1371. While the state's financial concerns are legitimate, they do not override the compelling private interests of the putative father and child in an accurate determination of parentage.

Moreover, the value of blood tests in disputed paternity proceedings is unassailable. Studies have indicated that red cell tests provide a sixty percent probability of excluding an erroneously accused man as the father and that the probability of exclusion jumps to ninety percent when the human leukocyte antigen test is also performed. Joint AMA–ABA Guidelines: *The Present Status of Serologic Testing in Problems of Disputed Parentage,* 10 Fam. L.Q. 247, 257–258 (1976). The reliability of these tests is well-recognized, to the extent that Indiana law provides that blood tests which exclude an accused as the father conclusively prove non-paternity. IC 31–6–6.1–8(b).

Furthermore, the fiscal and administrative burdens that requiring prepayment by the state would entail is minimal as compared to the compelling private interests involved and the highly exculpatory nature of blood tests. More importantly, our decision merely requires prepayment; if an indigent respondent is not excluded by the tests and is adjudged the father, the expense of blood testing may be assessed against him as costs, to be paid at such time when he is no longer indigent. IC 31–6–6.1–8(c); *see also Little, supra,* 452 U.S. at 15, 101 S.Ct. at 2210; *M. v. S.* (1979), 169 N.J.Super. 209, 404 A.2d 653.

Accordingly, we reverse and remand to the trial court for further proceedings consistent with this opinion.

MILLER, P.J., and CONOVER, J., concurs.