Gary LUDBAN and Joan Ludban,
Appellants–Respondents,

v.

Ronald BURTCH, Connie Burtch,
Nancy P. Reed, and Michael P.
Reed, Appellees–Petitioners.

No. 44A05–1007–PL–437.

Court of Appeals of Indiana.

June 27, 2011.

Rehearing Denied Aug. 22, 2011.

Tim J. Cain, Angola, IN, Attorney for Appellants.

Frank J. Agostino, South Bend, IN, Attorney for Appellees.

## OPINION

VAIDIK, Judge.

### Case Summary

Three couples who own property in two subdivisions on or near Pretty Lake in LaGrange County dispute their property lines. Unable to resolve their disputes, they proceeded to trial. Gary and Joan Ludban lost and now appeal claiming that several of the trial court's findings are erroneous. We agree with how the trial court resolved the matter and therefore affirm.

### Facts and Procedural History

Before reaching the facts of this case, we address some preliminary matters. We first note that there is some confusion as to who the appellees in this appeal actually are. The appellants, Gary and Joan Ludban, name only Ronald and Connie Burtch as the appellees in the captions on their briefs. However, the Ludbans

make arguments regarding Nancy P. and Michael B. Reed in their briefs. The Burtches' attorney, Frank J. Agostino, also lists only the Burtches as the appellees in the caption on their briefs. However, Attorney Agostino also makes arguments on behalf of the Reeds in their brief. In addition, Attorney Agostino's Appearance before this Court, which is file-stamped January 5, 2011, indicates that he appears for "Ronald Burtch, Connie Burtch, Michael Reed, and Nancy Reed." Despite the misleading nature of the captions before us, the Burtches and the Reeds are properly before us on appeal as appellees. *See also* Ind. Appellate Rule 17 ("A party of record in the trial court ... shall be a party on appeal.").

In addition to the caption confusion, the parties have completely failed to ensure that the exhibits below were included in the record on appeal, which are essential in a survey case such as this. Accordingly, we had to issue an order to obtain them from the trial court. We now turn to the facts.

Gary and Joan Ludban, Ronald and Connie Burtch, and Nancy P. and Michael B. Reed own properties on or near Pretty Lake in Wolcottville, LaGrange County, Indiana. Their properties are located within two subdivisions which we call Ihrie's First Addition and Pretty Lake Estates.[1] Ihrie's First Addition is east of Pretty Lake Estates, with the lake to the north. There is a section line between the two subdivisions.

The Burtches own property in Pretty Lake Estates. The Ludbans own several properties, one of which is in Ihrie's First Addition and is immediately adjacent to the Burtches in Pretty Lake Estates. Their properties are separated by a fence which the Ludbans constructed.

The Burtches also own a triangular tract in Ihrie's First Addition which was transferred from the Ludbans to the Burtches. A survey, called the Renkenberger survey, was prepared when this piece of property was transferred. The Renkenberger survey also established a boundary line between the Burtch and Ludban properties described above.

The Burtches hired Loralee Taylor to conduct a legal survey of an approximate 430' × 10' strip of land between Pretty Lake Estates and Ihrie's First Addition, which she completed on October 24, 2008. Ex. R–4. The legal survey was conducted according to Indiana Code section 36–2–12–10 ("A landowner desiring to establish the location of the line between the landowner's land and that of an adjoining landowner by means of a legal survey may do so as follows....").

In the meantime, the Reeds own Lot 29 in Ihrie's First Addition. The Ludbans own Lot 30 in Ihrie's First Addition, which is to the east of Lot 29. In 2004, the Reeds and the Ludbans were the beneficiaries of the vacation of a public right of way that previously separated their properties, and they each received ten feet along their property lines, causing an abutment of their property lines.

The Ludbans hired Gerald Teders to perform a legal survey of properties in Ihrie's First Addition, which was completed on November 6, 2008. Ex. L–5. Teders did not survey any property in Pretty Lake Estates. The Reeds then hired Duane Brown to perform a legal survey challenging Teders' survey, specifically, the Ludban/Reed property line. Ex. L–2. Gregory Roberts of Donovan Engineering

---

1. Pretty Lake Estates is further subdivided into the first and third additions, but for purposes of this appeal we refer to it as Pretty Lake Estates.

also performed a survey of Lot 29. Ex. R–5.

On January 9, 2009, the Ludbans filed a complaint against the Burtches alleging that the Burtches "claim[ed] a portion of [their] property." Appellants' App. p. 19. They argued that Taylor's legal survey was "incorrect" according to Teders' legal survey. *Id.* The Burtches filed a counterclaim against the Ludbans.

On January 26, 2009, the Reeds filed a complaint against the Ludbans challenging Teders' legal survey. Among other things, they alleged that Teders' legal survey, which was "incorrect" as determined by Brown, "moved the boundary line between [them] nearly two feet beyond any other previously performed survey to the advantage of" the Ludbans. *Id.* at 28. In October 2009, the two cases were consolidated, and the matter was set for a bench trial.

A bench trial was held in March 2010. At the bench trial, Attorney Agostino represented both the Burtches and the Reeds. The trial court issued consolidated findings and conclusions in June 2010. *See id.* at 5–17. The crux of the case appears to be that the trial court found several problems with Teders' survey, including that he (1) did not survey the Burtch property or any property in Pretty Lake Estates; (2) ignored monumentation found by the surveys of Renkenberger, Taylor, and Brown; (3) admitted to a 2.8′ +/- to 2.85 +/- east/west uncertainty for the south line of Tract 1 in the body of his survey; (4) created an overlap of approximately 1.52′ between Ihrie's First Addition and Pretty Lakes Estates; and (5) admitted to a 1′ +/- to 2.25 +/- uncertainty along the center of the vacated right of way in the body of his survey. The trial court found the other surveys more reliable because, among other things, they actually found monumentation when establishing the boundary lines between the various properties.

As for the property line between the Burtch and Ludban properties, the court found important that there is a fence separating them (which was erected by the Ludbans themselves), which coincides with the property line on the plat of Pretty Lake Estates, the Taylor survey, and the Renkenberger survey. The court also pointed out that the fence does not appear on the Teders survey.

The court stated that the dispute between the Reeds and the Ludbans concerns "the location of the property line separating Reeds' lot numbered 29 and Ludbans' lot numbered 30, in view of the vacation of the public way...." *Id.* at 10. The court noted that Brown and Roberts but not Teders found monumentation on Lots 29 and 30. The court also noted that the respected line of occupation between the Reeds and the Ludbans as marked by the willow tree stump, the landscaping divider, the seawall breaks, the grass-cutting line, the telephone pole on the ground, and the placement of the propane barbecue grill coincides with the boundary line as established by Brown and Roberts, not Teders. The court concluded:

1) The Complaint containing Count One and Count Two that was filed by Gary Ludban and Joan Ludban against Ronald Burtch and Connie Burtch should be and is denied in its entirety.

2) The legal survey filed by Gerald Teders on behalf of the Ludbans is null and void and of no legal effect.

3) The legal survey prepared by Duane Brown establishes the boundary line between Lot 29 and Lot 30 of Ihrie's 1st Addition to Lakeview Plat, LaGrange County, Indiana.

4) The Counterclaim filed by Ronald Burtch and Connie Burtch against Gary

Ludban and Joan Ludban should be and hereby is denied.

5) The legal survey filed by Loralee Taylor on behalf of Ronald Burtch and Connie Burtch remains in full force and effect.

\* \* \* \* \* \*

7) Neither party is awarded surveyor costs or attorney fees.

*Id.* at 17. The Ludbans now appeal.

## Discussion and Decision

The Ludbans make several arguments on appeal. Some pertain to the Burtches and others pertain to the Reeds. As for the arguments concerning the Burtches, the Ludbans first contend that the Taylor survey is erroneous as a matter of law because she failed to search for controlling physical monuments. Second, they contend that the trial court erred in determining that the fence between the Ludban and Burtch properties establishes the property line. Last, they contend that the trial court erred in denying their adverse possession claim to a strip of land used for access to Pretty Lake.

As for the arguments concerning the Reeds, the Ludbans first contend that the trial court erred in discrediting the Teders survey on grounds that it created a new tract of land between the subdivisions. Second, they contend that the trial court erred in implying that Gary Ludban disturbed the original monumentation between Lots 29 and 30. Third, they contend that the trial court's determination of the property line between the Reeds and the Ludbans based on the line of occupation is not supported by the evidence. Last, they contend that the trial court erred by failing to find that the property line between them and the Reeds had been established by acquiescence.

## I. Ludbans v. Burtches

■ In the dispute between the Ludbans and the Burtches, the Ludbans bore the burden of proof at trial and therefore they now appeal from a negative judgment. Where a party who had the burden of proof at trial appeals, he appeals from a negative judgment and will prevail only if he establishes that the judgment is contrary to law. *Ruse v. Bleeke,* 914 N.E.2d 1, 11 (Ind.Ct.App.2009). A judgment is contrary to law when the evidence is without conflict and all reasonable inferences to be drawn from the evidence lead to only one conclusion, but the trial court reached a different conclusion. *Id.*

■ The Ludbans first contend that the Taylor survey is erroneous as a matter of law because Taylor failed to search for controlling physical monuments. The trial court's Conclusion No. 10 provides, "The Ludban's Appeal of the Loralee Taylor [Survey] of October 24, 2008 has shown insufficient proof and should be denied." Appellants' App. p. 15.

The Ludbans cite 865 Indiana Administrative Code 1–12–10 in support of their argument. According to 865 Indiana Administrative Code 1–12–10(1), when conducting a retracement survey, a land surveyor shall search for controlling physical monuments and, when found, weigh their reliability. In addition, a land surveyor shall search for and locate monuments that reference missing control monuments. 865 Ind. Admin. Code 1–12–10(2). "Controlling monument" means "any undisturbed artificial, physical, or record monument called for in a record plat or land title description and controls any combination of the: (1) location; (2) dimensions; or (3) configuration; of the described tract." 865 Ind. Admin. Code 1–12–2.

The Ludbans concede that Taylor located the southeast corner of Section 16; however, they argue that she failed to

locate the northeast corner of Section 16. Therefore, the Ludbans' argument continues, Taylor "could not, legally or factually, establish the quarter section line, which doubled as the west line of Ihrie's First Addition." Appellants' Reply Br. p. 4. That is, the Ludbans claim that "logically, to establish the west line, both the southeast corner and the northeast corner must be located and established in the survey." Appellants' Br. p. 6. However, the Ludbans cite no authority that two *corners* must be located in order to establish a line. This is especially so when Taylor found one corner and then other points along the west line when establishing the west line of Ihrie's First Addition. *See* Ex. R–4; Appellee's Br. p. 4 ("It is an elementary fact of geometry that you only need two points to establish a line, not two corners."). Moreover, the Ludbans bore the burden of proof on this issue. Their surveyor, Teders, did not even survey this particular portion of land. *See* Appellants' App. p. 7 (Finding No. 6). The Ludbans have not met their burden on this issue.

■ Second, the Ludbans contend that the trial court erred in determining that the fence between the Ludban and Burtch properties, erected by the Ludbans themselves, establishes the property line. The trial court's findings and conclusions on this point provide:

15) The Plat of ... Pretty Lake Estates shows the Eastern boundary of the Burtch property to be the Section line.

\*  \*  \*  \*  \*  \*

17) There is a fence separating the Burtch and Ludban properties which fence coincides with the property line shown on the Plat of ... Pretty Lake Estates, the Loralee Taylor surveys and the Renkenberger survey. This fence does not appear on the Teders survey.

(Photographs contained in Exhibits B–4 and B–5).

\*  \*  \*  \*  \*  \*

6) The boundary line of occupation between Ronald Burtch and Connie Burtch and Gary Ludban and Joan Ludban is and remains the fence erected by Gary Ludban and Joan Ludban. It would be grossly unfair to deviate from the boundary line established by the Ludbans themselves.

7) The boundary line between Ronald Burtch and Connie Burtch and Gary Ludban and Joan Ludban is and remains the boundary established by the Renkenberger survey prepared for the transfer of the triangular tract from Gary and Joan Ludban to Ronald and Connie Burtch. It would be grossly unfair to deviate from the boundary line established by the Ludbans themselves.

*Id.* at 8, 9, 14.

The Ludbans point to Gary Ludban's trial testimony, wherein he testified that the fence was decorative landscaping upon which to plant raspberry bushes and was not intended to establish the property line. Gary also testified that he placed the fence closer to his property so that he could mow on the other side of it. However, in light of the surveys and the Pretty Lake Estates Plat, all of which show the fence line as the property line, the Ludbans' argument is merely a request to reweigh the evidence.

■ Finally, the Ludbans contend that the trial court erred in denying their adverse possession claim to a strip of land used for access to Pretty Lake. The trial court's conclusion provides:

8) The Ludban claim to adverse possession is without merit. Adverse possession requires:

(a) Control—The claimant must exercise a degree of use and control over

the parcel that is normal and customary considering the characteristics of the land (reflecting the former elements of "actual," and in some ways "exclusive," possession);

(b) Intent—The claimant must demonstrate intent to claim full ownership of the tract superior to the rights of all others, particularly the legal owner (reflecting the former elements of "claim of right," "exclusive," "hostile," and "adverse");

(c) Notice—The claimant's actions with respect to the land must be sufficient to give actual or constructive notice to the legal owner of the claimant's intent and exclusive control (reflecting the former "visible," "open," "notorious," and in some ways the "hostile," elements); and,

(d) Duration—the claimant must satisfy each of these elements continuously for the required period of time (reflecting the former "continuous" element).

See *Wilfong v. Cessna Corp.*, 838 N.E.2d 403, 406 (Ind.2005)

In the instant case, Ronald Burtch testified he used and maintained the property. The fence constructed and installed by Gary Ludban placed the property line where Ronald Burtch claims the line to be. *There is no evidence of control, intent or notice.* Moreover, as Ronald Burtch testified there was no dispute until this lawsuit. Adverse possession requires possession for 10 years and payment of taxes (Ind.Code Sec. 32–30–7–1); neither of which can be shown by Gary Ludban.

*Id.* at 14–15 (emphasis added). The trial court's findings provide:

18) The LaGrange County Treasurer has taxed Ronald Burtch and Connie Burtch on a tract of land 430′ × 10′ with no words of limitation "more or less." (Burtch tax bill contained in Exhibit B–3).

19) There has been no prior boundary dispute between Gary Ludban and Joan Ludban and Ronald Burtch and Connie Burtch prior to this action.

20) Ronald Burtch has used and maintained the tract of land extending from his residence to Pretty Lake a width of 10 feet more or less.

*Id.* at 9.

■ The Ludbans make several arguments on appeal, but we need address only one, control. In order to establish the requisite control, the claimant must exercise a degree of use and control over the parcel that is normal and customary considering the characteristics of the land; this element includes the former elements of actual and exclusive possession. *Daisy Farm Ltd. P'ship v. Morrolf*, 915 N.E.2d 480, 488 (Ind.Ct.App.2009). Ronald Burtch testified that he used the strip of land and mowed it. Gary Ludban, in turn, testified that he mowed the area along with Ronald. The trial court found that Burtch used the strip of land. Even if we credited Gary's testimony, the Ludbans have failed to establish control of this strip of land because they conceded that Ronald also uses it. The Ludbans have not established the elements of adverse possession.

## II. Reeds v. Ludbans

■ As for the dispute between the Reeds and the Ludbans, the Reeds bore the burden of proof at trial; therefore, the standard of review is different. That is, the Reeds are appealing from an adverse judgment, which is a judgment entered against a party defending on a given issue. *Garling v. Ind. Dep't of Natural Res.*, 766 N.E.2d 409, 411 (Ind.Ct.App.2002), *trans. denied.* On appeal from an adverse judgment, the findings are clearly erroneous if

they are not supported by substantial evidence of probative value. *Am. Heritage Banco, Inc. v. Cranston*, 928 N.E.2d 239, 246 (Ind.Ct.App.2010), *reh'g denied*. Moreover, we will reverse the judgment even where the supporting evidence is substantial if we are left with a definite and firm conviction that a mistake has been made. *Id.*

The Ludbans first contend that the trial court erred in discrediting Teders' survey on grounds that it erroneously created a new tract of land between the subdivisions. The trial court's findings and conclusions provide:

> 22) The original plats of Ihrie's First [and] Pretty Lake [Estates] were intended to be, when possible adjacent to one another and have the section line for the Southwest Quarter of Section 15, Township 36 North, Range 11 East as a common boundary.

> \*    \*    \*    \*    \*    \*

> 9) Finally, it's clear that Ihrie's 1st and Pretty Lake[ ] [Estates] were meant to abut against each other with the Section Line for the Southwest Quarter of Section 15, [T]ownship 36 North, Range 11 East, being the dividing line. The plats of the subdivisions use the Section Line to describe their location. The meander post that marked the Section Line at its approach to the lake has not been preserved. Its exact location will never be known. To fictitiously create a new tract of land in between the subdivisions would be an injustice to the original plats and disturb the property rights of all the adjoining landowners.

Appellants' App. p. 9, 15.

The Ludbans argue that Teders correctly measured the lot lines from the quarter section line and that Brown and Roberts did so erroneously because they began 2.99 feet east of the quarter section line. The

Ludbans have not adequately explained to us the significance of these measurements and the quarter section line. It is thus waived for our review.

■   The Ludbans next contend that the trial court erred in implying that Gary Ludban disturbed the original monumentation between Lots 29 and 30. The trial court's finding and conclusion on this point provide:

> 39) Gary Ludban was observed digging in and around the placement of monuments. (Photographs contained in Exhibits R–12, R–13 and R–14).

> \*    \*    \*    \*    \*    \*

> 16) There is a lack of proof to substantiate the original monumentation between Lots 29 .and 30 of Ihrie's First which fact is further made suspect by the picture of Gary Ludban digging in the location of monumentation.

*Id.* at 11, 16. The Ludbans argue that there is no evidence that Gary disturbed any monuments affecting Lot 29 or 30. They point to Nancy Reed, who testified at trial that she saw Gary near Lot 38 with a survey stake on the ground. Nancy said she did not know what Gary was doing, but because it was strange and concerned her, she took pictures. Although Gary's suspicious activity was not on Lot 29 or 30, the trial court allowed Nancy's testimony and admitted the photographs because it was "close enough" and went to Gary's "believability." Tr. p. 330. Although the trial court did not directly find that Gary disturbed the original monumentation affecting Lot 29 or 30, the trial court found that in light of the photographs of Gary digging in the area of monuments near Lot 38, the lack of monuments between Lots 29 and 30 was indeed "suspect." This finding is not clearly erroneous. In any event, this appears to be one of many

factors the trial court used to establish the property line between Lots 29 and 30.

■ The Ludbans next contend that the trial court's determination of the property line between them and the Reeds based on the line of occupation is not supported by the evidence. The trial court's conclusion states:

> 18) The boundary line of occupation between Michael Reed and Nancy Reed and Gary Ludban and Joan Ludban as shown by the willow tree stump, the break in the seawall, the landscape edging, the grass cutting line, and the telephone pole all coincide with the boundary established by Duane Brown and Greg Robert, not Gerald Teders.

Appellants' App. p. 16. The trial court did not determine the property line based solely on the line of occupation. Rather, the court explained that the line of occupation coincided with the boundary line established by both Brown and Roberts, not Teders. Nevertheless, the Ludbans put forth several arguments on appeal regarding why the boundary line established by Teders is the correct one.

We, however, find that the trial court's conclusion is supported by substantial evidence, including: Brown found a monument for the northeast corner of Lot 29; Roberts found a monument for the northeast corner of Lot 29; Brown found a monument along the west line of Lot 29; Roberts found a monument along the west line of Lot 29; Teders does *not* show a monument for the northeast corner of Lot 29; Teders does *not* show an iron pipe monument for any of the four corners of Lot 30; Teders' survey shows that a 1' +/- to 2.25 +/- uncertainty exists along the center of the vacated right of way due to the location of a # 5 rebar found near the southeast corner and 1″ pipe shown near the northeast corner of Lot 29; and Teders' survey shows the measured and platted distances for the north line of Lot 29, but not Lot 30. *Id.* at 10, 11 (Finding Nos. 28–31, 34–38, 40–41). That is, as alluded to several times, the trial court found several problems with Teders' survey and therefore properly relied on the other surveys to establish the property line between the Reeds and the Ludbans. We will not re weigh the evidence.

■ Finally, the Ludbans contend that the trial court erred by failing to find that the property line between them and the Reeds had been established by acquiescence. *See, e.g., Freiburger v. Fry,* 439 N.E.2d 169, 172 (Ind.Ct.App.1982) ("When adjoining landowners agree to erect a fence and treat that as a legal boundary, they are estopped from denying that this is the legal boundary line. This line agreement is not only binding on those parties who agree but also their successors in interest so long as there was no fraud present in the making of the agreement." (citation omitted)). The Ludbans presented this claim to the trial court as an affirmative defense. Specifically, the Ludbans argued that their and the Reeds' predecessors built a stone wall in the 1920s and treated this as the boundary line between the properties. The trial court did not believe that the stone wall was the boundary line between their properties, however. The trial court found:

> 53) The Court finds compelling the following language found within the Brown survey:
>
> ❋ ❋ ❋ ❋ ❋ ❋
>
> "There is a stone retaining wall located 3 feet (plus/minus) *west of the East property line* (to Lot 29 of Ihrie's First) *according to Mr. Ludban.* Glen Bolher constructed the wall in 1929 within the road right of way prior to being vacated (right of way was vacated in 2004). The backside of the wall (not the face) ap-

855

pears to be along the line established by G. Teders[."]

Appellants' App. p. 13 (emphasis added). Because the trial court did not find that the parties treated the stone wall as the legal boundary and the evidence supports this finding, the Ludbans' acquiescence claim fails.

Affirmed.

BAKER, J., and BARNES, J., concur.