Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 07 2013, 5:59 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**PRISCILLA BEAULIEU PELGEN**
The Law Office of Priscilla Pelgen
Kokomo, Indiana

ATTORNEY FOR APPELLEE:

**CRAIG A. DECHERT**
Kokomo, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN RE THE PATERNITY OF I.B. | ) |
| | ) |
| K.H., | ) |
| | ) |
| Appellant-Respondent, | ) |
| | ) |
| vs. | ) No. 34A02-1305-JP-401 |
| | ) |
| I.B. b/n/f L.B., | ) |
| | ) |
| Appellee-Petitioner. | ) |

APPEAL FROM THE HOWARD CIRCUIT COURT
The Honorable Lynn Murray, Judge
Cause No. 34C01-1206-JP-100

**October 7, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

L.B. married C.B. in 1999 and gave birth to a son later that year. L.B. and C.B. separated in October 2008, and L.B. petitioned to dissolve the marriage in February 2009. In August 2009, L.B. gave birth to a daughter, I.B. In their dissolution agreement, which was approved in August 2011, L.B. and C.B. stated that their son was the only child of the marriage and did not mention I.B. In June 2012, L.B., as next friend of I.B., filed a petition seeking to establish paternity in and obtain child support from K.H. The trial court held a paternity hearing, at which K.H. failed to appear. Both L.B. and C.B. testified about the circumstances regarding I.B.'s conception and denied that she was C.B.'s child. The trial court issued an order finding that L.B. had "clearly and convincingly" rebutted the statutory presumption that C.B. is I.B.'s biological father and had established by a preponderance of the evidence that K.H. is I.B.'s biological father. K.H. requested permission to file an interlocutory appeal, which the trial court denied. The court then held a hearing on child support and parenting time issues and ordered K.H. to pay support and $1200 of L.B.'s attorney fees.

K.H. now appeals, arguing that the trial court erred in concluding that L.B. had rebutted the statutory presumption that C.B. is I.B.'s father in the absence of any DNA evidence. Because DNA evidence is not required in this situation, we affirm the trial court.

**Facts and Procedural History**

In March 1999, L.B. married C.B. In September 1999, L.B. gave birth to a son, C.P.B. In October 2008, L.B. and C.B. separated. In February 2009, L.B. petitioned to

2

dissolve the marriage. In August 2009, L.B. gave birth to a daughter, I.B. In May 2011, L.B. and C.B. filed a dissolution agreement, which stated that C.P.B. was the only child of the marriage and did not mention I.B. In August 2011, the dissolution court approved the agreement and entered a decree dissolving the marriage.

In June 2012, L.B., as next friend of I.B., filed a petition seeking to establish paternity in and obtain child support from K.H. K.H. filed a motion to dismiss for lack of subject matter jurisdiction. On November 21, 2012, the trial court held a hearing on the paternity issue, at which K.H. failed to appear but was represented by counsel. On November 26, 2012, the court issued an order that reads in pertinent part as follows:[1]

**FINDINGS OF FACTS**

….

2.      I.B. was born to L.B. on August 11, 2009 in Howard County, Indiana.

3.      L.B. was married to C.B. on March 13, 1999.

4.      On September 6, 1999 during their marriage, C.B. and L.B. had a child, namely: C.P.B.

5.      C.B. and L.B. separated in October 2008, when L.B. and their child C.P.B. relocated from the marital residence.

6.      C.B. and L.B. last engaged in sexual intercourse in early October 2008.

7.      After separating from her husband C.B., L.B. engaged in sexual intercourse with respondent K.H. in late October and during November 2008.

8.      As a result of engaging in unprotected sexual intercourse during mid to late November 2008 with K.H., L.B. became pregnant with I.B.

---

[1] The order uses the parties' first and last names. We use their initials instead.

3

9.  During the period of November 2008 through October 2011, L.B. did not engage in sexual intercourse with any other person other than K.H.

10. I.B. was conceived in November 2008, while L.B. was still married to C.B., but after they had physically separated and after they had last had sexual intercourse.

11. At the end of November 2008, when she took an early pregnancy test, L.B. told K.H. she may be pregnant with his child.

12. On February 18, 2009, L.B. filed a petition for dissolution of marriage naming C.B., her husband as the respondent in the Howard Circuit Court ….

13. In her petition, L.B. affirmed that the only child of the marriage was C.P.B., and that she was not pregnant.

14. At the time L.B. filed her petition for dissolution in February 2009, she was not sure she was pregnant; but she knew if she was pregnant, the child was not a child of her marriage to C.B.[2]

15. While pregnant with I.B. in 2009, L.B. had an ultrasound test in [sic] which K.H. accompanied her.

16. While at the doctor's office during the test, K.H. made some remark about this being his last opportunity to father a male child.

17. I.B. was born to L.B. on August 11, 2009 after a full-term pregnancy.

18. I.B.'s birth certificate issued by the Indiana Board of Health listed L.B. as the mother and listed no person as the father.

19. After I.B.'s birth, K.H. contacted L.B. a number of times requesting to see the child I.B.

20. On May 4, 2011, … the parties [in the dissolution proceeding] by counsel filed a waiver of final hearing and dissolution agreement with a proposed Decree. The court noted that it would consider the same upon the parties completing the children coping with divorce seminar.

---

[2] L.B. testified that she had two menstrual cycles after she last had sexual intercourse with C.B. Tr. at 14.

21. In their dissolution agreement, L.B. and C.B. affirmed that the only child of their marriage was C.P.B. born September 6, 1999, and their agreement provided for said child's custody, visitation and support.

22. In their dissolution agreement, the child I.B. was not mentioned and therefore, no provisions with respect to said child's custody, visitation or support were made.

23. On August 11, 2011, after L.B. and C.B. had completed the required children coping with divorce course, the Howard Circuit Court … approved the parties' dissolution agreement and entered a decree dissolving their marriage.

24. In said decree, the only child of the marriage was identified as C.P.B.

25. C.B. denies he is the biological father of I.B.

26. C.B. has never held himself out to be I.B.'s father, and he has never provided any support for or exercised any parenting time with said child.

….

34. The evidence submitted [at the paternity hearing] proved by a preponderance of evidence, if not clearly and convincingly that the respondent K.H. is the biological father of I.B., the child born to L.B. on August 11, 2009.

35. The evidence submitted proved clearly and convincingly that L.B.'s former husband C.B. is not the biological father of I.B., and that said child is and was not a child of the marriage of L.B. and C.B.

36. Any finding of fact contained in the conclusions of law shall be deemed as incorporated herein.

## CONCLUSIONS OF LAW AND ORDER

….

2. A man's paternity may only be established in an action under Indiana Code Title 31 article 14, or by executing a paternity affidavit in accordance with Ind. Code 16-37-2.2-1. Ind. Code 31-14-2-1.

3.   A paternity action may be filed by a child. Ind. Code 31-14-4-1(5).

4.   A person who is otherwise incompetent may file a petition for paternity through its guardian, guardian ad litem, or next friend. Ind. Code 31-14-5-2(a).

5.   A child may file a paternity petition at any time before the child reaches twenty (20) years of age. Ind. Code 31-14-5-2(b).

6.   A man is presumed to be a child's biological parent if the man is or has been married to the child's biological mother and the child is born during the marriage of [sic] not later than 300 days after the marriage is terminated by death, annulment or dissolution. Ind. Code 31-14-7-1(1).

7.   Because this statute creates a presumption rather than a conclusion, the marriage presumption of paternity remains rebuttable. Tarver v. Dix, 421 N.E.2d 693 (Ind. App. 1981).

8.   The presumption of the legitimacy of a child born during the marriage may be rebutted by evidence that the husband could not have had access to the mother at the time when the child must in the course of nature have been begotten. Pilgrim v. Pilgrim, 75 N.E.2d 159 (Ind. Ct. App. 1947).

….

10.  Evidence of the child's mother's and alleged father's sexual intercourse and mother's and husband's lack of sexual activity constitute evidence to rebut the marriage presumption, and to establish that the alleged father, not husband, was the child's father. Minton v. Weaver, 697 N.E.2d 1259 (Ind. App. 1998).

….

13.  A dissolution decree alone is not res judicata on the issue of paternity as to a non-party to the marital dissolution proceedings. As a child was neither a party nor privy to a prior dissolution proceeding between the child's mother and her former husband, the child is not barred from bringing a paternity action against the child's alleged biological father. In re paternity of J.W.L., 672 N.E.2d 966 (Ind. Ct. App. 1996).

6

14. When a party seeks dismissal of a paternity petition pursuant to Trial Rule 12(B)(1) for lack of subject matter jurisdiction, the trial court may consider evidence outside the pleadings. In Re R.P.D. ex rel. Dick, 708 N.E.2d 916, 919 (Ind. Ct. App. 1999). In such cases, factual disputes bear on the trial court's jurisdiction, and the trial court must resolve such factual disputes. *Id.*

15. In the case here, I.B. by her next friend, L.B. has timely brought a petition to establish paternity as against her alleged biological father K.H.

16. I.B.'s paternity has not been previously determined, and as such the issue of her paternity is not *res judica* [sic], by virtue of said child having been born while her mother was married to C.B.

17. The court in L.B. and C.B.'s dissolution case never determined I.B. as a child of the marriage; in fact, the parties to the dissolution action acknowledged that fact by intentionally omitting any mention of I.B. in their dissolution agreement.

18. I.B. is not a child of the marriage of L.B. and C.B.

19. As L.B. was married to C.B. at the time she gave birth to I.B., C.B.'s paternity of I.B. is presumed; however, that presumption is rebuttable by evidence showing that someone else (i.e. K.H.) and not C.B. is the child's biological father.

20. In his motion to dismiss the paternity petition for lack of subject matter jurisdiction, K.H. argued by his counsel that the fact I.B. was born during L.B. and C.B.'s marriage precludes I.B. by her next friend claiming that anyone other than C.B. is her biological father.

21. At the hearing on November 21, 2012, K.H.'s counsel specifically cited the case Pilgrim v. Pilgrim to the court as standing for the proposition that no evidence to rebut C.B.'s paternity of I.B. could be introduced. 118 Ind. Ap[p] 6, 75 N.E.2d 159 (Ind. Ct. App. 1947).

22. In fact, the case Pilgrim v. Pilgrim holds contrary to said counsel's assertion, and clearly states that the presumption of the husband's paternity of a child born during the marriage is rebuttable by evidence, including that the husband could not have had access to the mother at the time when the child was conceived.

7

23. In his motion to dismiss, K.H. by counsel asserts that "the Petitioner and her husband C.B. have committed Fraud upon this Court."

24. Despite making this rather inflammatory assertion, respondent has not shown that either the petitioner (I.B.), her mother L.B., or C.B. has defrauded the court. In their dissolution agreement, L.B. and C.B. omitted any reference to I.B. because they both knew that C.B. was not I.B.'s biological father, and that I.B. was not a child of their marriage. Even if I.B. had been included as a child of the … marriage, Indiana law would permit I.B., a non-party to the dissolution case, to bring a paternity action against her biological father.

25. This court has subject matter jurisdiction to determine the paternity of I.B.

26. The respondent's motion to dismiss for lack of subject matter jurisdiction and failure to state a claim for relief should be and is herein denied.

27. The evidence submitted at hearing rebuts the presumption that C.B. is the biological and/or legal father of I.B.

28. The court finds and concludes that respondent K.H. is the biological father of I.B., a child born to L.B. on August 11, 2009, and the respondent's paternity of said child is hereby established.

29. Any finding of fact which should have been included as a conclusion of law is hereby incorporated as such.

30. Upon finding that a man is the child's biological father, the court shall conduct a hearing to determine the issues of support, custody, and visitation. Ind. Code 31-14-10-1.

31. The court will schedule a hearing to determine the respondent's rights and obligations with respect to I.B.'s support, custody and visitation after coordinating a hearing date with the parties' counsel. The court will also consider at that hearing the petitioner's request for the respondent's payment of her attorney fees. At said hearing, the respondent K.H. is ordered to appear subject to the contempt power of the court.

Appellant's App. at 64-73.

8

K.H. filed a motion to certify the order for interlocutory appeal, which the trial court denied. On April 4, 2013, the trial court held a hearing on the remaining issues of child support, parenting time, and attorney fees. On April 8, 2013, the trial court issued an order that, among other things, directed K.H. to pay child support and $1200 of L.B.'s attorney fees. K.H. now appeals.

## Discussion and Decision

K.H. contends that the trial court erred in concluding that L.B. had rebutted the statutory presumption that C.B. is I.B.'s biological father.[3] Where the trial court has entered special findings of fact and conclusions thereon at a party's request pursuant to Indiana Trial Rule 52, we typically use a two-tiered standard of review. *L.H. Controls, Inc. v. Custom Conveyor, Inc.*, 974 N.E.2d 1031, 1041 (Ind. Ct. App. 2012).

> We first determine whether the evidence supports the findings and then whether the findings support the judgment. We "shall not set aside the findings or judgment unless clearly erroneous." Ind. Trial Rule 52(A). In determining whether a finding or judgment is clearly erroneous, we may neither reweigh the evidence nor reassess the credibility of the witnesses. The evidence is viewed in the light most favorable to the judgment, and we will defer to the trial court's factual findings if they are supported by the evidence and any legitimate inferences therefrom. A trial court's legal conclusions, however, are reviewed de novo. A judgment also is clearly erroneous if the trial court has applied the wrong legal standard to properly found facts.

*Id*. at 1041-42 (some citations and quotation marks omitted).

---

[3] Indiana Appellate Rule 46(A)(10) provides that an appellant's brief "shall include any written opinion, memorandum of decision or findings of fact and conclusions thereon relating to the issues raised on appeal." K.H.'s brief includes the trial court's April 2013 order regarding child support and attorney fees but not the November 2012 order regarding paternity, which is the only issue raised in the argument section of his brief.

K.H. is appealing from an adverse judgment, "which is a judgment entered against a party defending on a given issue." *Ludban v. Burtch*, 951 N.E.2d 846, 852 (Ind. Ct. App. 2011).

> On appeal from an adverse judgment, the findings are clearly erroneous if they are not supported by substantial evidence of probative value. Moreover, we will reverse the judgment even where the supporting evidence is substantial if we are left with a definite and firm conviction that a mistake has been made.

*Id*. at 852-53 (citation omitted).

K.H. first directs us to Indiana Code Section 31-14-7-1, which provides in pertinent part that a man is presumed to be a child's biological father if the man and the child's biological mother are or have been married to each other and the child is born during the marriage or not later than 300 days after the marriage is terminated by death, annulment, or dissolution. K.H. then cites several cases for the proposition that this statutory presumption is not conclusive but "may be rebutted only by 'direct, clear[,] and convincing evidence.'" Appellant's Br. at 13 (citing, inter alia, *Fairrow v. Fairrow*, 559 N.E.2d 597, 600 (Ind. 1990), and *Minton*, 697 N.E.2d 1259).[4] Finally, K.H. asserts that, "[u]nder *Fairrow*, only DNA evidence can defeat the presumption of legitimacy, and no such evidence exists in this case excluding [C.B], or proving the existence of any genetic link between [L.B. and K.H.]." *Id*. at 14.

In *Fairrow*, the dissolution decree identified Joseph, the parties' child, as a child of the marriage and ordered Joe, the former husband, to pay child support. According to Joe, "he had no reason to question Joseph's paternity at the time of the divorce." 559 N.E.2d at 598. After Joseph experienced symptoms of sickle cell anemia, Joe's doctor "recommended that he seek the advice of a medical geneticist." *Id*. Joe underwent genetic testing that conclusively established that he could not be Joseph's biological father. Joe then sought relief from the child support order pursuant to Indiana Trial Rule 60(B)(8). In concluding that Joe was entitled to relief, our supreme court said,

> In this case, there is direct, clear, and convincing evidence that Joe is not Joseph's biological father. If, at the time of the dissolution hearing, the trial court had been presented with the medical evidence now available, it would not have been in a position to enter the support order.

> Although we grant Joe relief, we stress that that the gene testing results which gave rise to the prima facie case for relief in this situation became available independently of court action. In granting relief to a party who learned of his non-parenthood through the course of ordinary medical care, we do not intend to create a new tactical nuclear weapon for divorce combatants. One who comes into court to challenge a support order on the basis of non-paternity without externally obtained clear medical proof should be rejected as outside the equitable discretion of the trial court.

> In sum, we strongly discourage relitigation of support issues through T.R. 60(B)(8) motions in the absence of highly unusual evidence akin to the evidence presented in this case.

---

[4] In the statement of issues section of his brief, K.H. asserts, "The court applied a preponderance of the evidence standard, when the correct legal standard to rebut the presumption of legitimacy involving children born during marriage is direct, clear and convincing evidence." Appellant's Br. at 1. On the contrary, the trial court properly applied the clear-and-convincing standard to the rebuttable presumption of legitimacy (finding 35) and the preponderance standard to the establishment of his paternity (finding 34). *See H.W.K. v. M.A.G.*, 426 N.E.2d 129, 133 (Ind. Ct. App. 1981) ("Paternity actions are civil proceedings and the alleged father must be proved to be such by a preponderance of the evidence."). K.H. does not specifically assert that L.B. failed to establish his paternity by a preponderance of the evidence.

*Id*. at 600. In this case, there was no prior legal determination of I.B.'s paternity and no existing child support order to overturn. Consequently, we do not find *Fairrow*'s heightened standard controlling here.

K.H. makes a similar argument regarding *Minton*. In that case, Connie Minton married Mark Minton in December 1995 and gave birth to a daughter, A.M., in January 1996. Connie filed a petition to establish paternity in Marc Weaver. At trial, the Mintons testified that "they did not have sexual intercourse at any time during 1995." 697 N.E.2d at 1259. "On the other hand, both Connie and Marc Weaver testified that they had sexual intercourse approximately six or seven times between March and May of 1995. Prior to trial, Weaver, Connie, and A.M. submitted to a DNA test which revealed a 99.97% probability of Weaver's paternity." *Id*. The jury determined that Weaver was not A.M.'s biological father, and Connie appealed.

The *Minton* court observed that "the jury was required to find that Mark Minton is A.M.'s biological father absent direct, clear, and convincing evidence which rebutted this presumption" and went on to state,

> Here, the evidence was uncontradicted that Weaver and Connie engaged in sexual intercourse during the months in which A.M. must have been conceived. Too, both Connie and Mark Minton testified that they did not have sexual intercourse during that time. Perhaps most significantly, Connie also presented DNA evidence which indicated that Weaver's probability of paternity is 99.97%. The legislature has recognized and approved of the value of blood test results as a means of establishing paternity. *See* IC 31-14-7-1(4) (providing that a man is presumed to a be a child's biological father if the man undergoes a blood test which indicates with at least a ninety-nine percent probability that he is the child's biological father). Taken as a whole, the evidence of Connie's and Weaver's sexual activity, Connie's and Mark Minton's lack of sexual activity, and Weaver's blood test constitutes direct,

12

clear, and convincing evidence that Weaver, and not Mark Minton, is the father of A.M. Accordingly, the jury's finding that Weaver is not the father of A.M. is clearly erroneous and against the logic and effect of the facts.

Weaver argues that the jury's verdict is not erroneous because Connie failed to rebut Mark Minton's presumption of paternity. He points to *Murdock v. Murdock*, 480 N.E.2d 243 (Ind. Ct. App. 1985), *reh. denied*, which provides a list of the type of direct, clear, and convincing evidence which may be used to rebut the marriage presumption. In *Murdock*, this court identified the following six examples of appropriate rebuttal evidence:

> [That a husband] (1) is impotent; (2) was absent so as to have no access to the mother; (3) was absent during the entire time the child must have been conceived; (4) was present with the mother only in circumstances which clearly prove there was no sexual intercourse; (5) was sterile during the time the child must have been conceived; [or] (6) is excluded as the child's father based upon blood grouping test results.

*Id*. at 245 n.6. Weaver correctly notes that Connie presented no evidence which falls within these examples. *However, the categories contained in* Murdock *are merely examples. It is possible that other evidence can constitute direct, clear, and convincing evidence capable of rebutting the marriage presumption.* A DNA test of another man which indicates a 99.97% probability that the man is a child's father combined with uncontradicted evidence that the man had sexual intercourse with the mother at the time the child must have been conceived is an additional example of the type of direct, clear, and convincing evidence which can rebut the marriage presumption.

*Id*. at 1260 (emphasis added).

Contrary to K.H.'s assertion, *Minton* does not state that only DNA evidence can defeat the statutory presumption. Indeed, it specifically contemplates that other evidence can be used to do so. In this case, both L.B. and C.B. testified that they last had sexual intercourse in early October 2008. L.B. testified that she had two menstrual cycles thereafter and that she had unprotected sexual intercourse with K.H. in late October and November 2008. In late November 2008, L.B. took a pregnancy test and told K.H. that she may be pregnant with

13

his child. K.H. accompanied L.B. to an ultrasound test and remarked about this being his last opportunity to father a male child. C.B. has never affirmed that I.B. is his child, and I.B. was not mentioned as a child of the marriage in the dissolution proceeding.

The trial court concluded that this evidence proved "clearly and convincingly" that C.B. is not I.B.'s biological father. Notably, K.H. failed to contradict any of this evidence at the hearing. On appeal, he attacks L.B.'s and C.B.'s credibility, specifically regarding their failure to mention I.B. during the dissolution proceeding. The trial court was made aware of the omission, however, and was untroubled by it, construing it as an acknowledgement that C.B. was not I.B.'s biological father. K.H.'s argument to the contrary is essentially an invitation to reweigh evidence and judge witness credibility in his favor, which we may not do. Based on the foregoing, we cannot conclude that the trial court's order is clearly erroneous. Therefore, we affirm.

Affirmed.

BARNES, J., and PYLE, J., concur.