

FILED

Oct 11 2019, 9:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Mark A. Frantz
Jordan L. Tandy
Downs Tandy & Petruniw, P.C.
Wabash, Indiana

ATTORNEY FOR APPELLEES

Bryce Runkle
Peru, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Stephen J. Presley,<br><br>*Appellant-Plaintiff,*<br><br>v.<br><br>Daniel S. McCain and<br>Joseph D. DeRozier,<br><br>*Appellees-Defendants* | October 11, 2019<br><br>Court of Appeals Case No.<br>19A-MI-88<br><br>Appeal from the Miami Superior<br>Court<br><br>The Honorable Richard A.<br>Maughmer, Special Judge<br><br>Trial Court Cause No.<br>52D01-1705-MI-138 |

**Baker, Judge.**

[1] Stephen Presley appeals the trial court's order quieting title to two small parcels of land in Daniel McCain and Joseph DeRozier, arguing that the trial court erred because there was insufficient evidence proving that the Appellees had acquired ownership through adverse possession. Finding that the trial court did err, we reverse and remand with instructions.

# Facts

[2] Presley, McCain, and DeRozier own three adjacent properties comprising Lot 164 in Peru, Indiana. DeRozier owns the property at 85 East Fifth Street, and his property is directly west of Presley's property, which is at 87 East Fifth Street. McCain's property lies directly south of DeRozier's and Presley's properties at 16 North Huntington Street. DeRozier purchased his property in 1998 from Mark Allen, who had resided on the property since 1984. DeRozier himself lived on the property for two years before he moved out and started leasing his home to different tenants. Presley purchased his property from Danny Rasner in 2002. McCain purchased his property in 1999.

[3] The two small parcels of land in dispute are as follows: (1) a strip of land, referred to by all parties as "Dog Run," that runs north to south between DeRozier's and Presley's properties; and (2) a small patch, referred to by all parties as the "Flower Bed," that runs west to east between Presley's property to the north and McCain's property to the south. *See* Appellees' Suppl. App. Vol. III p. 75.

[4] Dog Run is part of an alleyway that is 4.2 to 5.7 feet wide and is enclosed by a gate at the north end of the parcel. Appealed Order p. 1. According to the original 1837 plat, Dog Run is a roughly two-foot-wide strip of land abutting the boundary line separating the two properties on one side and Presley's home on the other. The Flower Bed is a small parcel that is roughly 2.9 feet wide and is approximately 45 square feet. It is located just south of Presley's garage and abuts McCain's property line. A fence runs along the southern border of Presley's garage, with fences bordering the Flower Bed on both its western and eastern perimeters. These fences enclosing the Flower Bed existed at the time McCain purchased his property. Pursuant to the original plat, Presley legally owns both Dog Run and the Flower Bed.



[5] The following represents a history of the relationships among these different property owners and their interactions with Dog Run and the Flower Bed:

- At some point in time, Allen and Rasner built the northern gate that encloses Dog Run. Allen gave Rasner standing permission to access Dog Run through the gate. The gate had no lock. The gate was installed because Allen had small children.
- Shortly after DeRozier and Presley bought their properties from Allen and Rasner, respectively, DeRozier began requiring Presley—the new owner—to ask for permission to access Dog Run.
- DeRozier stopped regularly visiting the property after he started leasing it to new tenants. During this time, Presley would frequently access Dog Run without seeking DeRozier's permission.
- Eventually, one of DeRozier's tenants, Rebecca Cover, notified DeRozier that a man unknown to her (Presley) was repeatedly using Dog Run to get to the backyard. Consequently, in November 2016, DeRozier placed a lock on the gate and put up a "Private [P]roperty, [N]o [T]respassing" sign. Tr. Vol. II p. 37. DeRozier informed his tenants that he would allow Presley to access Dog Run only during certain times and only with his permission.
- With regard to the Flower Bed, it, along with the fences enclosing it, had been in existence since the time McCain purchased his property in 1999. Presley would ask McCain for permission to access the Flower Bed so that McCain's dog would not get out. McCain testified that he never denied Presley access to the Flower Bed. McCain grew flowers, mowed the grass, and installed stepping stones in the Flower Bed after he first bought his property.
- Within the last ten years, McCain attempted to build a shed in the Flower Bed. To prevent this from happening, Presley contacted the City of Peru. It was determined that McCain could not construct the shed. McCain testified that he has not maintained the Flower Bed since then. At some point, McCain installed a planter's box that interferes with Presley's maintenance and upkeep of the garage.

[6] On May 22, 2017, Presley filed a pro se complaint for ejectment and damages against DeRozier and Presley, arguing that they do not own the two contested parcels. The matter was set for an August 2, 2017, bench trial, but was

continued per Presley's requests. On August 3, 2017, the trial court judge recused himself upon accusations by Presley that he would not be fair and impartial. A special judge was appointed on August 7, 2017.

[7] That same day, DeRozier and McCain filed a joint motion for summary judgment. Over the next thirty days, Presley filed ten different pro se motions, including a motion for leave to amend the pleadings, which DeRozier and McCain moved to strike. The trial court held a December 13, 2017, hearing on the various motions. At the hearing's conclusion, the trial court denied DeRozier and McCain's joint motion for summary judgment and granted Presley's motion for leave to amend.

[8] On December 29, 2017, DeRozier and McCain filed a motion for a more definite statement and a counterclaim arguing that they had acquired ownership of the parcels through adverse possession. All parties then filed separate motions for summary judgment, which the trial court denied on May 2, 2018.

[9] Following an October 31, 2018, bench trial on the competing quiet title claims, the trial court issued an order on November 2, 2018, finding that DeRozier and McCain had acquired ownership of Dog Run and the Flower Bed, respectively, through adverse possession. However, the trial court granted Presley an easement to access the two parcels. Shortly thereafter, both sides moved to correct error. In its modified final order, the trial court granted DeRozier and McCain's motions to correct error and vacated the easement awarded to Presley. Presley now appeals.

# Discussion and Decision

[10] Presley's sole argument on appeal is that the trial court erred when it awarded McCain and DeRozier title to the two parcels. Specifically, Presley contends that McCain and DeRozier failed to prove by clear and convincing evidence that they had acquired ownership of those parcels through adverse possession.

[11] Our standard of review is well established:

> On appellate review of claims tried without a jury, we will not set aside the trial court's findings and judgment unless they are clearly erroneous and we give due regard to the trial court's ability to assess the credibility of the witnesses. Ind. Trial Rule 52(A). A judgment will be clearly erroneous when there is no evidence supporting the findings or the findings fail to support the judgment[] . . . . While findings of fact are reviewed under the clearly erroneous standard, appellate courts do not defer to conclusions of law, which are reviewed de novo. To determine that a finding or conclusion is clearly erroneous, an appellate court's review of the evidence must leave it with the firm conviction that a mistake has been made. Where cases present mixed issues of fact and law, we have described the review as applying an abuse of discretion standard.

*Dewart v. Haab*, 849 N.E.2d 693, 695 (Ind. Ct. App. 2006) (some internal citations omitted). We will not reweigh the evidence, but will consider the evidence in a light most favorable to the judgment. *Fobar v. Vonderahe*, 771 N.E.2d 57, 59 (Ind. 2002).

[12] Our Supreme Court in *Fraley v. Minger* laid out the four elements that a claimant must prove in order to acquire ownership of property through adverse possession:

(1) Control—The claimant must exercise a degree of use and control over the parcel that is normal and customary considering the characteristics of the land (reflecting the former elements of "actual," and in some ways "exclusive," possession);

(2) Intent—The claimant must demonstrate intent to claim full ownership of the tract superior to the rights of all others, particularly the legal owner (reflecting the former elements of "claim of right," "exclusive," "hostile," and "adverse");

(3) Notice—The claimant's actions with respect to the land must be sufficient to give actual or constructive notice to the legal owner of the claimant's intent and exclusive control (reflecting the former "visible," "open," "notorious," and in some ways the "hostile," elements); and,

(4) Duration—the claimant must satisfy each of these elements continuously for the required period of time (reflecting the former "continuous" element).

829 N.E.2d 476, 486 (Ind. 2005). The claimant must prove all four elements by clear and convincing evidence. *Id.* The statutorily required period of time for the duration element is ten years. Ind. Code § 34-11-2-11.

[13] Based on the trial court's final order[1] and the record before us, there is a dearth of evidence proving that DeRozier and McCain acquired ownership of Dog Run and the Flower Bed, respectively, through adverse possession.

---

[1] Though the trial court issued some basic findings of facts in its final order, there are virtually no facts pertaining to the trial court's adverse possession analysis. Given the extremely fact-sensitive nature of property disputes, we urge trial courts going forward to include as many facts as possible in order to explain how and why they reached their ultimate decisions.

## *Dog Run*

First, regarding Dog Run, there is no evidence that DeRozier's actions sufficed to show actual or constructive notice that he wanted to, or did, have exclusive control over Dog Run until November 2016. Rather, for the entirety of Allen and Rasner's neighborly relationship and for most of DeRozier and Presley's neighborly relationship, Rasner and Presley accessed Dog Run with relative ease and frequency. Rasner assisted Allen with construction of the gate under the belief that it was used to safeguard Allen's small children, not because Allen wanted to exclude Rasner from Dog Run. Allen gave Rasner standing permission to access Dog Run whenever he wanted, thereby undercutting any argument that Rasner (or Presley) did not also have control of that disputed land. *See Altevogt v. Brand*, 963 N.E.2d 1146, 1152-53 (Ind. Ct. App. 2012) (holding that an admission that others have a right to use a trail and evidence that others do use the trail are "fatal" to claimants' adverse possession claims). DeRozier has not even lived on the property since 2000, and the record shows that Presley would frequently access Dog Run without explicit permission from DeRozier since 2000.

It was not until November 2016 that DeRozier put Presley on notice that he wanted exclusive control over Dog Run by placing a lock and "no trespassing" sign on the gate. This timeline falls short of the ten-year period required for an adverse possession claim. Because nothing in the record suggests that Allen prohibited Rasner from using Dog Run for the thirteen years Allen owned the property, DeRozier has no time to tack on as a party in privity. At most,

therefore, DeRozier's time would have commenced in 2016, meaning that fewer than three years have accrued.

[16] This paucity of evidence proffered by DeRozier leads us to conclude that DeRozier has not proved all four elements of adverse possession by clear and convincing evidence. Therefore, the trial court erred when it quieted title to Dog Run in DeRozier.

### Flower Bed

[17] Next, regarding the Flower Bed, there is a similar lack of evidence proving that McCain intended to exercise exclusive control over the parcel. As with Dog Run, Presley could access the Flower Bed whenever he wanted, even if he did not seek McCain's permission in advance. In other words, McCain and Presley acknowledged dual use of the Flower Bed throughout the entirety of their time living next to one another. *See Ludban v. Burtch*, 951 N.E.2d 846, 852 (Ind. Ct. App. 2011) (holding that claimant fails to establish ownership of a strip of land by adverse possession after conceding that another party frequently used it). Despite the presence of the fences surrounding the perimeter of the Flower Bed, both Presley and McCain testified that those fences were there at the time McCain moved in. As such, McCain cannot point to these fences as evidence that he intended to maintain exclusive control over the Flower Bed.

[18] Moreover, Presley defeated any adverse possession claim when he notified the City of Peru in late 2014 about McCain's plan to build a shed on the Flower Bed. In other words, Presley undermined any claim by McCain to assert

exclusive control. Ultimately, the city ruled that a shed would have been too close to Presley's garage. After this litigation concluded, McCain did not maintain the Flower Bed's upkeep. Instead, McCain installed a planter's box, which led Presley to initiate court proceedings once again because the box interfered with Presley's use of the garage.

[19] Finally, like DeRozier, McCain has not met the ten-year requirement. Though McCain had been living on his property since 1999, he has offered no evidence to show when the ten-year clock began ticking or proving that he, in fact, satisfied the duration element. Based on this record, we can only find that McCain did not prove by clear and convincing evidence that he had acquired ownership of the Flower Bed through adverse possession.

[20] Thus, we find that the trial court erred when it quieted title to two parcels in DeRozier and McCain. In evaluating all the evidence in a light most favorable to the judgment, we find that title should be quieted in favor of Presley, as the rightful and legal owner of the two parcels.

[21] The judgment of the trial court is reversed and remanded with instructions to enter judgment in favor of Presley.

Kirsch, J., and Crone, J., concur.